UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LAKELAND BANK, a New Jersey Charter
State Bank,

        **Plaintiff,**

    v.          5:08-CV-1231
                (FJS/ATB)
NEVER E NUFF, *in rem*; and BREEN
P. MCMAHON, *in personam*,

         **Defendants.**
_____

**APPEARANCES**         **OF COUNSEL**

**TROY & TROY, P.C.**       **WILLIAM J. TROY III, ESQ.**
120 East Buffalo Street, Suite 5
Ithaca, New York 14850
Attorneys for Plaintiff

**BREEN P. MCMAHON**
Syracuse, New York 13202
Defendant *pro se*

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Currently before the Court is Plaintiff's motion for entry of a default judgment in the amount of $186,280.34. Defendant has not filed any papers in opposition to this motion.

### II. BACKGROUND

Plaintiff commenced this action on November 17, 2008. *See* Dkt. No. 1. On that same date, Plaintiff requested a warrant for arrest *in rem* and moved for an order authorizing the

immediate deposition of Defendant. *See* Dkt. Nos. 4-5. The Court granted the request for the issuance of the warrant for arrest and attachment of the vessel Never E Nuff. *See* Dkt. No. 6. The Court also issued an Order authorizing Defendant's immediate deposition. *See* Dkt. No. 8.

After Defendant did not appear for his deposition, Plaintiff moved for an Order holding Defendant in contempt for not appearing for his scheduled deposition. *See* Dkt. No. 9. The Court scheduled a hearing regarding this motion. *See* Dkt. No. 10. Defendant did not appear for the hearing on the scheduled day and time. *See* Minute Entry dated January 13, 2009. After the Court had adjourned, Defendant appeared; at which point, the Court inquired about why he had been late and about the location of the vessel at issue in this action. *See id.* Defendant responded that he was late due to day-care issues, that he had not read the subpoena that he had received scheduling his deposition until after the date for the deposition had passed, and that he had not attempted to contact Plaintiff's counsel at that time.

In response to the Court's inquiry about the location of the vessel, Defendant stated, under oath, that he had sold the vessel to a man named "Patrick," whose last name he did not know, that "Patrick" had written him a check for the approximate amount that he owed on the vessel, $146,000.00, and that "Patrick" had taken the vessel to Canada. *See id.* Defendant also informed the Court that this transaction had occurred more than one year ago. *See id.* At the close of this discussion, the Court ordered Defendant to pay the reasonable expenses that Plaintiff had incurred as a result of Defendant's failure to appear for his deposition. *See* Dkt. No. 12.

On May 1, 2009, Defendant filed a letter, in which he informed the Court that he did not have an attorney, that he would not file an answer, and that Plaintiff could move for default judgment. *See* Dkt. No. 18. Defendant also provided the Court with his mailing address. *See id.*

On March 29, 2010, Plaintiff requested an entry of default, *see* Dkt. No. 26, which the Clerk of the Court entered on March 30, 2010, *see* Dkt. No. 27.  Plaintiff then filed the pending motion for entry of a default judgment.  *See* Dkt. No. 28.

### III. DISCUSSION

When a court considers a motion for the entry of a default judgment, it must "accept[] as true all of the factual allegations in the complaint . . . ."  *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (citations omitted).  However, the court cannot construe the damages alleged in the complaint as true.  *See Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citations omitted).  Rather, the court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty."  *Id.* (citation omitted).  Finally, "it [is] not necessary for the District Court to hold a hearing [to determine damages], as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment.'"  *Grabowski v. Gizzi*, No. 8:07-CV-1242, 2008 WL 5244117, *1 (N.D.N.Y. Dec. 15, 2008) (quoting *Fustok v. ContiCommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).

In support of its motion for entry of a default judgment, Plaintiff has submitted an attorney affirmation and the affirmation of its Assistant Treasurer, Debra Burke, with exhibits. *See* Dkt. No. 28.  With respect to the issue of costs, Ms. Burke states that "Plaintiff has expended $1,350.00 in costs in connection with this case."  *See* Affirmation of Debra Burke dated April 9, 2010 ("Burke Aff."), at ¶ 2 & Exhibit "1" attached thereto (a copy of Plaintiff's check 341652 payable to the "U.S. District Court" in the amount of $350.00 for filing fees) & Exhibit "2" attached thereto (a copy of Plaintiff's check 341651 payable to the "U.S. Marshall" in the amount

of $1,000.00 for the fee required in connection with the Order of arrest that the Court issued in connection with this action to foreclose on the vessel's mortgage).

Pursuant to 28 U.S.C. §§ 1920-1921, Plaintiff is entitled to the costs it seeks. *See* 28 U.S.C. § 1920 (providing that "[a] judge or clerk of any court of the United States may tax as costs the following: (1) Fees of the clerk and marshal . . ."); 28 U.S.C. § 1921 (providing that "[t]he United States marshals or deputy marshals shall routinely collect, and a court may tax as costs, fees for the following: (A) Serving a writ of . . . attachment in rem . . . in admiralty"). Therefore, the Court grants Plaintiff's motion for costs in the amount of **$1,350.00**.

With regard to the loan itself, Ms. Burke provides the following information. The principal amount of the loan is $132,042.55. *See* Burke Aff. at ¶ 6. Interest on the loan has accrued, through March 30, 2010, in the amount of $24,241.79. *See id.* The per diem interest rate is $36.14. *See id.* Using these figures, she calculates that "a total of principal and interest up to and including April 14, 2010 in the amount of $156,826.44" is due and owing. *See id.*

In addition, Ms. Burke contends that Plaintiff believes it is entitled to recover an additional $12,096.41 from Defendant. *See id.* at ¶ 9. She explains that, "[u]pon the default by defendant, plaintiff was entitled to transfer the amount of $12,096.41 from a reserve fund which was being held on behalf of an intermediary who had arranged for plaintiff to do the financing of defendant's boat through the marina which sold the boat to defendant." *See id.* According to Ms. Burke, "[t]he amount of $12,096.41 actually reduced the principal to the figure of $132,042.56, . . ., however that amount was not paid by defendant." *See id.* Ms. Burke states that "[i]t is plaintiff's position that if this amount is recovered through the proposed judgment that the $12,096.41 will be returned to the FISG Reserve Fund." *See id.* & Exhibit "13" attached thereto

(memo, dated October 2, 2009, reflecting the order for the transfer of the funds from the FISG Reserve Fund to defendant's account bearing account number 164131).

Finally, Ms. Burke asserts that Plaintiff has expended attorney's fees in connection with this action, which she contends Defendant agreed to pay under the installment contract that is at issue here, to wit

> Collection Costs: If you [Plaintiff] hire an attorney to bring a lawsuit to collect any amount owing under this Contract, I [Defendant] will pay you attorney's fees up to 15% of the amount then due, plus court costs, or such lesser amounts as the court allows.

*See id.* at ¶ 7 & Exhibit "3" attached thereto.

According to Ms. Burke, Plaintiff has incurred the following attorney's fees in this action:

> $1,030.00 to Goldstein Isaacson, PC, in payment of October 6, 2008 invoice, *see id.* at ¶ 7 & Exhibit "4" attached thereto;
>
> $3,621.17 to Goldstein Isaacson, PC, in payment of November 6, 2008 invoice, *see id.* at ¶ 7 & Exhibit "5" attached thereto;
>
> $5,816.00 to Goldstein Isaacson, PC, in payment of December 4, 2008 invoice, *see id.* at ¶ 7 & Exhibit "6" attached thereto;
>
> $1,382.20 to Goldstein Isaacson, PC, in payment of January 8, 2009 invoice, *see id.* at ¶ 7 & Exhibit "7" attached thereto;
>
> $952.09 to Goldstein Isaacson, PC, in payment of February 4, 2009 invoice, *see id.* at ¶ 7 & Exhibit "9" attached thereto;
>
> $3,000.00 to Troy & Troy, P.C., in payment of March 9, 2009 invoice, *see id.* at ¶ 7 & Exhibit "10" attached thereto;
>
> $304.00 to Andrew J. Goldstein, P.C., in payment of April 27, 2009 invoice, *see id.* at ¶ 7 & Exhibit "8" attached thereto; and
>
> $380.00 to Troy & Troy, P.C., in payment of May 15, 2009 invoice, *see id.* at ¶ 7 & Exhibit "11" attached thereto.

In addition, Plaintiff incurred $500.00 in attorney's fees as a result of noting Defendant's default and in drafting, serving, and filing this motion. *See id.* at ¶ 7; Affirmation of William J. Troy III dated April 9, 2010, at ¶ 5 (affirming that, on Plaintiff's behalf, he had spent a total of 2.5 billable hours "on the notice requesting the Clerk to note defendant's default and in drafting, serving and filing this motion" and that he "has been billing [his] time at a $200 per hour rate"). Finally, Ms. Burke notes that, pursuant to this Court's February 23, 2010 judgment, the Court has already awarded Plaintiff $1,080.00 in attorney's fees and that, therefore, this amount should be subtracted from the total amount of attorney's fees noted in her affirmation, such that the total amount of attorney's fees that Plaintiff is seeking is $16,007.49. *See* Burke Aff. at ¶ 8.

Plaintiff has submitted documentary evidence to support its request for damages. However, in reviewing this documentation, the Court finds that Ms. Burke miscalculated the amount of attorney's fees that Plaintiff has incurred in this action. Plaintiff seeks a total of $16,007.49 in attorney's fees ($17,087.49 less the amount of $1,080.00, which this Court has already awarded to Plaintiff). However, the attorney's fees evidenced in Exhibits "4" through "11" plus the additional $500.00 requested for noting Defendant's default and drafting, serving and filing this motion total **$16,985.46**, not $17,087.49. Thus, when the Court deducts the $1,080.00 that it has already awarded to Plaintiff, the remaining amount is **$15,905.46**, not the $16,007.49 that Plaintiff seeks. Finally, because the $15,905.46 in attorney's fees that Plaintiff has incurred in this action is less than 15% of the amount that Defendant owed under the installment contract at the time that Plaintiff filed this suit, the Court awards Plaintiff **$15,905.46** in attorney's fees as part of the judgment.

In sum, after reviewing the documentation that Plaintiff has submitted, the Court finds

that Plaintiff is entitled to a default judgment in the amount of **$190,948.79**, calculated as follows:

| | |
|---|---|
| Principal | $132,042.55 |
| Interest through 03/30/10 | $ 24,241.79 |
| Interest for the period 3/31/10 through the date of judgment (8/24/10) at $36.14 per diem | $  5,312.58 |
| Transfer of money from dealer reserve to account (not paid by Defendant) | $ 12,096.41 |
| Attorney's fees | $ 15,905.46 |
| Costs | $  1,350.00 |
| **Total** | **$190,948.79** |

### IV. CONCLUSION

Accordingly, after reviewing the entire file in this matter, Plaintiff's submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for entry of a default judgment is **GRANTED** in the amount of **$190,948.79**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Plaintiff in accordance with this Memorandum-Decision and Order and close this case.

**IT IS SO ORDERED.**

Dated: August 24, 2010
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge